## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **v.** | ) **C.A. 03-416 E** |
| | ) **Crim. No. 98–3 E** |
| | ) |
| **CARL ANTHONY KNIGHT,** | ) |
| | ) |
| **Petitioner.** | ) |

### OPINION

On April 7, 1999, a jury found defendant/petitioner Carl Anthony Knight guilty of one count of conspiracy to distribute a "mixture and substance containing a detectable amount of cocaine base" in violation of 21 U.S.C. § 846. On August 17, 1999, Knight was sentenced to life imprisonment.

Presently before the Court is Knight's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255. For the reasons stated herein, we will deny the motion.

### I. Background

#### A. The Scope and Nature of the Conspiracy

We now briefly summarize the evidence as presented at trial. FBI agent Frankland M. Gorham headed the Erie Area Gang Law Enforcement Task Force ("EAGLE Task Force") beginning in early 1997, which conducted investigations into drug trafficking in the Erie, Pennsylvania area. Agent Gorham testified that he had learned that Mr. Knight and Victor Calderone-Rodriguez were possibly dealing crack cocaine in Erie. He had also learned that Calderone-Rodriguez and his associates had often rented cars from Budget and driven those cars to New York City to pick up drugs. Gorham thereafter rented a car from Budget, installed a

1

global positioning ("GPS") device, and instructed the Budget employee that when the next known associate of Calderone-Rodriguez came into the Budget office to rent a car, the Budget employee should lease that particular car to them.

The FBI learned that Calderone-Rodriguez worked with various co-conspirators, including Robert Earl Jones, Jermaine Lucas and Juan Arias. On November 11, 1997, another known associate, Pat Vorhees rented the specific vehicle as previously arranged by Agent Gorham. Calderone-Rodriguez, Lucas and Jones drove to Manhattan that day. Their trip was monitored via the GPS device. When they returned to Erie two days later, they were arrested.

Each of these men was later indicted, plead guilty and testified at Mr. Knight's trial. They described in a consistent fashion the modus operandi of the drug trafficking conspiracy. First, after renting a car in Erie, they would drive to New York City and meet with their supplier. They then tested the quality of the cocaine by cooking a sample to make crack. If their test revealed that it was high quality cocaine, they would then buy it and cook the remainder at Calderone-Rodriguez's mother's apartment in New York. Once cooked, the crack was put into hollowed-out candles encased in glass and a coating of wax was poured over the top. Typically, it was Juan Arias who would transport the crack cocaine to Erie.

Once in Erie, the candles were taken to adjacent apartments belonging to Jones and Lucas (collectively referred to at trial as the "Connor" residence) or to Calderone-Rodriguez's mother-in-law's home. The candles were then broken up into smaller quantities for sale. Calderone-Rodrigquez's mother-in-law testified that she would receive $300 - $400 and a half-ounce of crack for allowing the use of her home for the delivery of the crack. Knight was then notified of their arrival and would come retrieve the drugs. When the co-conspirators returned to Erie, they

2

would page Knight. If Knight didn't respond quickly, they would look for him. After getting the crack, Knight, in turn, distributed the crack to others, setting the price himself, and these individuals then further distributed the crack cocaine to other smaller level dealers. Until each new distributor earned Knight's trust, Knight would limit his supply. Once proven trustworthy, Knight would permit the distributor to purchase larger amounts such as one-half kilogram to one kilogram quantities of crack cocaine.

Testimony at trial established that Knight conspired to distribute a very large amount of crack cocaine from 1993 through the date of his arrest in 1997 and that he was a leader in the drug running business. Knight provided the cash to Calderone-Rodriguez prior to each trip; the trips to New York City were only made when Knight had the money in hand to purchase the crack cocaine. Knight gave Calderone-Rodriguez roughly $50,000 per week to purchase crack. Throughout the period from 1993 to 1997, Knight switched residences and vehicles frequently and owned nothing in his name. Both Lucas and Jones testified that Calderone-Rodriguez had told them that Knight was distributing the crack that they brought back from New York.

Ronnie Knight, Carl Knight's cousin, testified that initially he purchased one-ounce quantities of crack from Carl Knight, and eventually, he was buying a kilogram of crack for $24,000. Lionel Williams testified that he had purchased increasing amounts of crack from Knight to the point that he paid an estimated half a million to a million dollars, at $25,000 per week, to Knight. Ronnie Knight also testified that in the summer of 1996 Knight delivered a kilogram of "rock" to Williams as he sat in his girlfriend's car. Williams also had frequently seen Knight counting money into stacks of $5,000 each.

Another witness, Cara Harrison, testified that on one occasion, she had seen her

3

unemployed, crack dealing boyfriend Shannon Mathis count out between $18,000 and $25,000 in cash. Shortly thereafter Knight came to the hotel room, where they were living. Harrison left the room when Knight arrived; when she returned, the money was gone. We also heard testimony from Laurette Coleman, who stated that she received crack from Knight every two or three weeks from December of 1994 until his arrest.

## B. The Defendant's Arrest

Upon arriving in Erie on November 13, 1997 (the date of Knight's arrest) after what would be their last drug run, the Calderone-Rodriguez and other co-conspirators were being watched by law enforcement. Agents had obtained anticipatory search warrants and were awaiting their arrival. Agents were also monitoring phone calls and pagers. The agents noted a flurry of activity and were able to piece together a timeline of activities by the co-conspirators. At about 6:30 a.m. Jones and Arias entered the Connor residence within minutes of each other. Calderone-Rodriguez soon paged Knight several times. Lucas left the Connor residence and walked to his mother's house carrying a bag. Halim Stoval, Calderone-Rodriguez, and Arias walked to Lucas' mother's house, where they all had gathered. They then left the Lucas residence, which agents searched an hour later. During the search 67 packages of crack cocaine were seized. Arias, Jones, and Calderone-Rodriguez were arrested. Knight did not know this. Knight made several calls later that morning to various places associated with Calderone-Rodriguez, apparently looking for him.

In the meantime, Jones agreed to cooperate with law enforcement and made a monitored call from his own residence to Knight. Jones told Knight to pick up the crack cocaine at Calderone-Rodriguez's house. Knight arrived at that location to pick up the crack, and was

4

arrested at 2:40 p.m. He had two pagers and a cell phone on his person at the time.

Law enforcement officers searched various residences known to be associated with the conspiracy. At the Connor residence they found a bag containing the hollowed-out glass-encased candles and a digital scale. At Calderone-Rodriguez's mother-in-law's house they found more candles and nearly $39,000 in cash that Calderone-Rodriguez later identified as belonging to himself and Knight.

## B. Procedural history

The original indictment was filed on November 18, 1997, at Crim. No. 97-37 Erie. It charged that from November 1996 to on or about November 13, 1997, Calderone-Rodriguez, Knight, Arias, Jones, Stovall and Lucas conspired with others, known and unknown, to distribute cocaine base, commonly known as crack, contrary to the provisions of 21 U.S.C. § 841(a)(1) and in violation of 21 U.S.C. § 846. Each of the co-defendants in this original case pled guilty and testified on behalf of the government at the trial against Knight.

A superseding indictment was filed on February 10, 1998 at Crim. No. 98-3 E and charged that the conspiracy had lasted a longer period of time, from January of 1993 to November 14, 1997. It named as defendants Knight, Cooley and Crockett, and alleged that they had conspired with others, known and unknown, to distribute cocaine base, commonly known as crack, contrary to the provisions 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846. The original indictment was dismissed on motion of the government on March 16, 1998.

At trial, Knight was represented by counsel Robert A. Sambroak, Jr. In his defense, Knight took the stand and also called several witnesses. Knight testified as to the issue of his employment history, specifically stating that during the period charged in the indictment he

5

managed a clothing store owned by his aunt and uncle, Tina and David Aiken. David Aiken testified on Knight's behalf as to the employment record and corroborated Knight's claim that he was lawfully employed during a portion of the time the government alleged in the indictment that he had been dealing drugs. On cross-examination, however, Aiken admitted that he had rented 40 cars for Knight between 1993 and 1997. Throughout his defense, Knight never attempted to dispute the amount of drugs involved in the conspiracy; rather, he argued that he was not involved in a conspiracy to distribute illegal drugs at all.

After 40 minutes of deliberation, on April 7, 1999, a jury found Knight guilty. A presentence investigation report was ordered, to which objections were filed. The presentence report states that the agents seized 1.8 kilograms of cocaine base in the searches conducted on November 13, 1999. PSR ¶¶ 17-30. At sentencing, Knight did not object to this amount.

At the sentencing hearing on August 16, 1999, we agreed with the probation office's calculation of a four level increase in Knight's base offense level based on an adjustment for his role in the offense, pursuant to U.S.S.G. § 3B1.1(a), because Knight was an organizer or leader in the conspiracy that involved 5 or more persons. We made specific findings on the record to support this four level increase. We then found an offense level of 43 and a criminal history category of Roman Numeral II, and sentenced Knight to a term of imprisonment for life, which was mandated by the applicable guidelines, followed by a term of supervised release of 5 years. The United States Court of Appeals for the Third Circuit affirmed the conviction on direct appeal in a Memorandum Opinion filed May 24, 2000. See United States v. Knight, 216 F.3d 1077 (3d Cir. 2000) (table).

Knight appealed to the Supreme Court of the United States. In that appeal, Knight argued for the first time that the government's failure to specify a quantity of drugs in the indictment,

and our failure to require the government to prove that quantity at trial by proof beyond a

reasonable doubt, entitled him to relief pursuant to the intervening decision in Apprendi v. New

Jersey, 530 U.S. 466 (2000).[1] The Apprendi decision was issued a month after the Third Circuit

affirmed Knight's conviction on direct appeal. The Supreme Court granted certiorari, vacated

the Third Circuit's order affirming Knight's conviction, and remanded the case to the Third

Circuit "for further consideration in light of Apprendi v New Jersey."

## D. The Scope of the Third Circuit's Ruling

On remand, the Third Circuit determined that the failure to submit the issue of drug

quantity to the jury did not constitute plain error in this case. United States v. Knight, 50 Fed.

Appx. 565, 2002 WL 31429873 (3d Cir. 2002), citing United States v. Vazquez, 271 F.3d 93 (3d

Cir. 2001) and United States v. Cotton, 535 U.S. 625 (2002).

In Vazquez, the defendant was charged with drug conspiracy, obstruction of justice, and

witness tampering. Vazquez was convicted of conspiracy to distribute and possess cocaine in

violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), which prescribed a maximum sentence of 20

years. Because of three judicially-found facts (drug quantity, his leadership role, and attempted

obstruction of justice) the district court sentenced him to more than 24 years' imprisonment.

On appeal the Third Circuit discussed the effect of the judicially-determined drug quantity. It

found Vazquez's sentence erroneous under Apprendi because the "judge, rather than the jury,

determined drug quantity and then sentenced Vazquez to ... a term in excess of his ... statutory

maximum." 271 F.3d at 99. Despite the district court's error, however, the court also found that

Vazquez failed to show an effect on his substantial rights because the drug quantity was never in

---

[1] The jury's verdict was returned without special verdict or particularized findings as to
drug quantity, as was common practice before Apprendi; the presentence investigation report
followed 21 U.S.C. § 841(b)(1)(A) which provided for life imprisonment where a defendant is
convicted of distributing more than 50 grams of cocaine base.

dispute. The quantity of drugs involved was established at trial and substantiated by scientific

evidence. Vazquez never contested the amount. Accordingly, the court held that Vazquez's

sentence would have been the same if the government had submitted drug quantity for a jury

determination, that is, failure to submit this question to the jury, while an Apprendi violation, had

no actual effect on defendant's sentence.[2]

In its Opinion on remand, United States v. Knight, 50 Fed. Appx. 565, 2002 WL

31429873 (3d Cir. 2002) , the Third Circuit explained the post-Apprendi legal landscape:

Almost one and one-half years after we decided Vazquez, the Supreme Court
reached the same conclusion in Cotton. Cotton, like Knight, was charged with
violating 21 U.S.C. §§ 846 and 841(a)(1). Thereafter, the government returned a
superseding indictment expanding the time period of the charged conspiracy and
adding additional coconspirators. The superseding indictment charged Cotton only
with conspiracy to distribute and possess with intent to distribute, "a 'detectable
amount' of cocaine and cocaine base." 535 U.S. at ----, 122 S.Ct. at 1783. The
jury was instructed that it could convict Cotton so long as it was convinced
beyond a reasonable doubt that he conspired to distribute or possess with intent to
distribute the charged controlled substances. The court specifically informed the
jury that "the amounts involved are not important." Id. Thereafter, the sentencing
court made a finding of drug quantity that implicated the enhanced sentencing
penalties contained in § 841(b)(1)(A) which authorizes life imprisonment for drug
offenses involving "at least 50 grams of cocaine base." Some of the codefendants
were sentenced to 30 years imprisonment, and others were sentenced to life
imprisonment based upon the court's determination of the quantity of drugs
involved. Id. at 1783. That determination was based only upon a preponderance of
the evidence. The defendants did not object to this finding in the district court.
Thereafter, the [Supreme] Court decided Apprendi and the defendants asked the
court of appeals to invalidate their sentences under the holding in that case. The
court of appeals first noted the defendants' failure to raise the claim in the district
court, and reviewed their appeal for plain error. The court held that the defendants
had established plain error because the error affected the fairness, integrity, or
public reputation of judicial proceedings. The Supreme Court reversed.

After noting that the failure to charge drug quantity in the indictment did not
constitute a "jurisdictional" defect, the Court held that the defendants could not
establish plain error "even assuming [defendants'] substantial rights were affected.
. . ." 535 U.S. at ----, 122 S.Ct. at 1786. The Court reasoned that, given the
evidence of the amount of drugs at trial, "the error did not seriously affect the

---

[2]Vazquez was decided before United States v. Booker, 543 U.S. 220 (2005).

fairness, integrity, or public reputation of judicial proceedings." Id. The Court
noted:

> Evidence that the conspiracy involved at least 50 grams of cocaine
> base was overwhelming and essentially uncontroverted. Much of
> the evidence implicating respondents in the drug conspiracy
> revealed the conspiracy's involvement with far more than 50 grams
> of cocaine base.

Id. [footnote an internal quotation marks omitted]. The same is true here.

This jury's verdict clearly establishes that it was convinced beyond a reasonable
doubt that Knight did conspire to possess with intent to distribute, and did
distribute, cocaine base. His defense did not go to the amount of drugs involved.
He argued that he was not involved in a conspiracy to distribute illegal drugs at
all. The jury obviously rejected that argument. Accordingly, the jury credited
testimony from coconspirators including evidence that Knight bought
approximately 2 kilograms of cocaine base for between $21,000 to $25,000 per
kilogram every ten days. In addition, Victor Calderone-Rodriguez testified that he
was Knight's partner during the course of the conspiracy and that Knight gave him
$50,000 a week to purchase 2 kilograms of crack cocaine during the course of the
conspiracy. That testing, and other evidence of additional amounts of crack
cocaine, was corroborated by telephone records, testimony from other
conspirators, hotel records, and a search that was executed pursuant to a valid
search warrant. Accordingly, there is no doubt whatsoever that the jury concluded
beyond a reasonable doubt that Knight's conspiracy involved the distribution of
more than 50 grams of cocaine base. That is all that is necessary to trigger the
maximum statutory penalty of life imprisonment.

Indeed, on this record, we can conclude with confidence that the 50 gram
threshold authorizing life imprisonment pales in comparison to the vast quantity
of drugs the jury concluded beyond a reasonable doubt that Knight actually
distributed. Therefore, here, as in Cotton, "even assuming [defendant's]
substantial rights were affected, the error did not seriously affect the fairness,
integrity, or public reputation of judicial proceedings." 535 U.S. at ----, 122 S.Ct.
at 1786. Accordingly, we will once again affirm the judgment of sentence.

50 Fed. Appx. at 568-569, 2002 WL 31429873 *2-3.

The Third Circuit rejected "the defendant's attempt to "load up" this remand with issues

that are totally outside of the parameters set forth in the remand order" including Knight's claim

of ineffective assistance of counsel and his argument that the indictment was defective for failing

9

to specify the drug quantity. Knight, in turn, filed the motion to vacate pursuant to 28 U.S.C. §
2255 (Doc. 156), to which the government has responded (Doc. 171). Knight has also filed two
supplemental responses (Doc. 176 and 179).

## II. Evidentiary Hearing

When a Motion is made under 28 U.S.C. §2255, the question of whether to order a
hearing is committed to the sound discretion of the district court. In exercising that discretion,
the court must accept the truth of the Petitioner's factual allegations unless they are clearly
frivolous on the basis of the existing record. United States v. Day, 969 F.2d 39, 41-42 (3d Cir.
1992). Further, the court must order an evidentiary hearing to determine the facts unless the
motion and files and records of the case show conclusively that the petitioner is not entitled to
relief. Id.; United States v. Gordon, 979 F.Supp. 337, 339 (E.D. Pa. 1997).

We find no need for an evidentiary hearing as the record conclusively establishes that the
Petitioner is not entitled to the relief sought in the petition. 28 U.S.C. § 2255. This member of
the Court remembers the evidence presented at trial quite well and has, out of an abundance of
caution, carefully reviewed the record of the trial, including the trial transcripts and evidence, and
all relevant background materials.

## III. Standard of Review under 28 U.S.C. §2255

Section 2255 of Title 28 of the United States Code provides a means of collaterally
attacking a sentence imposed after a conviction. United States v. Cannistraro, 734 F.Supp. 1110,
1119 (D. N.J. 1989), aff'd, 919 F.2d 133 and 919 F.2d 137 (3d Cir. 1990), cert. denied, 500 U.S.
916. Pursuant to 28 U.S.C. §2255, a federal prisoner may move the sentencing court to vacate,
set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the
Constitution or laws of the United States, or that the court was without jurisdiction to impose

such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255. Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v. Gordon, 979 F. Supp. 337, 339 (E.D. Pa. 1997), citing Hill v. United States, 368 U.S. 424, 428 (1962).

## IV. Discussion

### A. Dismissal of Claims Already Litigated

Knight argues that because the indictment charged only a conspiracy to distribute a "detectable quantity" of cocaine base, he must be re-sentenced based on a finding that the relevant conduct attributable to him is only 4.99 grams of cocaine base. He also alleges that he was sentenced in violation of Apprendi, because the indictment did not contain, nor did the jury find, the quantity of drugs involved in the conspiracy to distribute.

As we cited above, the Third Circuit stated:

> Knight now argues that, in light of the Court's ruling in Apprendi, he should not receive a sentence greater than the 'default' period of 20 years imprisonment provided for distribution of any detectable quantity of cocaine base under 21 U.S.C. § 841(b)(1)(c). However, Knight's argument is clearly foreclosed by decisions of this Court, as well as subsequent decisions of the Supreme Court.

2002 WL 31429873 (2d Cir.), citing Vazquez, 271 F.3d 93 and Cotton, 535 U.S. 625.

Knight is not entitled to re-litigate these issues in his section 2255 petition to the extent that they were raised in a direct appeal. Withrow v. Williams, 507 U.S. 680, 720-721 (1993) (Scalia, J., concurring). We also find that, based on our review of the record and as more fully

explained herein, he has not been able to supplement his constitutional claim with a colorable showing of factual innocence. Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986). The evidence presented at trial clearly established that Knight was distributing, on average, 1.5 to 2 kilograms of crack cocaine each week in Erie and that, on occasion, he dealt as many as 4 kilograms in a week. The omission of drug quantity from the indictment was not error sufficient to entitle him to relief.

We also find that to the extent that Knight argues he is entitled to relief under Apprendi, such relief is not available on collateral review. United States v. Swinton, 333 F.3d 481, 490 (3d Cir. 2003).

## B. Procedural Bar

If a claim was not raised on direct appeal, such claims are defaulted and may not be raised in a section 2255 motion except under specific circumstances.

### 1. Knight's Claim that is Procedurally Barred

Knight claims that the indictment was "constitutionally defective" because he was not given adequate notice of the charges against him, as required by the Fifth Amendment due process clause. This issue could have been raised on direct review but was not; therefore it is procedurally barred. Bousley v. United States, 523 U.S. 614, 621 (U.S. 1998). Knight argues that the indictment should be dismissed due to prosecutorial misconduct and fraud upon the court. He argues that Assistant United States Attorney John Trucilla[3] made a false representation that the Pennsylvania State Police Regional laboratory report established that the drug involved in the conspiracy was "cocaine base, commonly known as crack," when the report only identified

---

[3] John Trucilla is now a judge in the Court of Common Pleas of Erie County, Pennsylvania.

12

it as "cocaine base." We find this argument meaningless and not legally relevant; there was no fraud upon the court, the jury, or the grand jury. As explained above, the evidence at trial established that the co-conspirators were distributing crack. The report was admitted into evidence together with the stipulation, and thus, there was no "fraud upon the court" or the jury. This argument not only lacks merit but it could have been raised on direct review but was not, and therefore, we will deny the motion to vacate as procedurally barred.

## 2. Cause and Prejudice

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley, 523 U.S. at 622 (citing Murray v. Carrier, 477 U.S. 478, 485 & 496 (1986); Wainwright v. Sykes, 433 U.S. 72, 87 (1977); and Smith v. Murray, 477 U.S. 527, 537 (1986); see also United States v. Frady, 456 U.S. 152, 167-68 (1982)).

To show cause, the petitioner "must establish that 'some external impediment' prevented him from raising the claim." Wise v. Fulcomer, 958 F.2d 30, 34 n. 9 (3d Cir. 1992 ) (quoting McClesky v. Zant, 499 U.S. 467 (1991); see also Frady, 456 U.S. at 170). "Prejudice exists where 'errors at trial . . . worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions.'" Coleman v. Thompson , 501 U.S. 722, 753 (1991); Murray v. Carrier, 466 U.S. 478, 494 (1986); see also Frady, 456 U.S. at 170.

"Actual innocence" is concerned with actual, as opposed to legal, innocence. Calderon v. Thompson, 523 U.S. 538, 559 (1998). "To establish actual innocence, petitioner must demonstrate that, ' "in light of all the evidence,"' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S.

13

298, 327-328 (1995)). Knight has failed to make any averment of cause and prejudice, and his conviction was sound. We further find that the superseding indictment, both by itself and when read in conjunction with the original indictment, provided him sufficient notice of the charge and the penalty he faced. It is plainly worded and clearly states the nature of the charge against Knight. The remaining counts of the indictment charge each of Knight's co-defendants with distribution and possession of crack in quantities up to 50 grams and thus, he was clearly on notice that the charged conspiracy (Count I) involved distribution of quantities in excess of 50 grams. Moreover the indictment memorandum set forth the applicable statutory penalties, specifically, "a term of imprisonment of not less than twenty (20) years, to a maximum of life." (Doc. 15). He and his counsel were on notice of the amount of drugs alleged to be involved in the conspiracy. With respect to the drug quantity, then, there were no errors at trial that worked to his disadvantage or infected the entire trial with errors of constitutional dimension. And, as the Third Circuit noted previously, his conviction was soundly based on the overwhelming evidence. Indeed, attached to the government's response to the motion to vacate are affidavits of Knight's trial counsel and prior counsel, who state unequivocally that they advised him of the maximum penalty in the course of their discussions with him as to whether he ought to try to negotiate a favorable plea agreement.

Nevertheless, one possible ground for cause for his procedural default is ineffective assistance of counsel. Ineffective assistance of counsel claims are properly brought for the first time via collateral attack in a 28 U.S.C. §2255 Motion. United States v. Thornton, 327 F.3d 268, 271-72 (3d Cir. 2003). We address Knight's claims of ineffectiveness of counsel next.

## C. Ineffective Assistance of Counsel

Knight claims that his counsel was ineffective for a number of reasons, many of which

14

have been addressed previously in other contexts and some of which overlap. He argues that 1) counsel failed to move for dismissal of the indictment on Speedy Trial Act grounds; 2)counsel conspired with the government attorney to commit a fraud on the court; 3) counsel committed a fraud on the Court by stipulating with the government that the drugs were crack cocaine; 4) counsel failed to file a motion for acquittal based on lack of evidence that Knight conspired with the named co-conspirators; 5) counsel failed to object to the sentence being imposed based on "crack cocaine" when the laboratory report showed that the drugs were "cocaine base;" 6) counsel failed to conduct an adequate investigation into Knight's case; 7) counsel filed a frivolous direct appeal; 8) counsel failed to object to the court's "constructive amendment" of the indictment; 9) counsel misadvised Knight as to the amount of prison time he was facing by going to trial; and 10) counsel failed to object to FBI Special Agent Gorham's testimony that there were no abnormalities regarding the custody or handling of the drugs while they were in the lab.

Knight also argues that his appellate counsel was ineffective in failing to raise four issues on appeal: 1) that evidence existed of fraud on the court and prosecutorial misconduct; 2) that there was a lack of evidence that the drugs were crack; 3) that the government failed to prove that Knight conspired with Cooley and Crockett, and 4) that the life sentence imposed upon him was excessive.

### 1. Applicable Law

"A claim of ineffective assistance requires a defendant to establish that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant." McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993); Strickland v. Washington, 466 U.S. 668, 687-688 (1984), cert. denied, 510 U.S. 1028 (1993). "To establish prejudice, a defendant must demonstrate that there is a 'reasonable

15

probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir. 2000) (quoting Strickland, 466 U.S. at 694).

In assessing the first prong, the Supreme Court has instructed that "[t]he proper measure of attorney performance" is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. This is an objective standard, and must be "viewed to the extent possible without 'the distorting effects of hindsight.'" Duncan v. Morton, 256 F.3d 189, 200 (3d Cir. 2001) (quoting Strickland, 466 U.S. at 688-90). In addition, a "reviewing court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" McAleese, 1 F.3d at 175 (quoting Strickland, 466 U.S. at 692).

Addressing the second part of the Strickland analysis, the prejudice prong, the Supreme Court has explained that a "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." Id. at 694. In making the prejudice determination, the court must consider the totality of the evidence. Id. at 695.

A claim of ineffective assistance must identify the specific errors counsel has made. Conclusory allegations are not sufficient to support a petition under Section 2255. Blackledge v. Allison, 431 U.S. 63, 74 (1977).

## 2. Analysis of Ineffectiveness Claims

As to trial counsel, we need only credit Knight's nonfrivolous factual claims in support of his ineffectiveness claims. Day, 969 F.2d at 41-42.

First, we will address Knight's argument concerning the charges as alleged in the superseding indictment. The Speedy Trial Act, 18 U.S.C. § 3161 et seq., requires that an

16

indictment or information be filed within thirty days from the date on which the defendant was arrested. Id. at § 3161(b). Knight was arrested on November 13, 1997 and was indicted eleven days later at Crim. No. 97-37 E. The original indictment at Crim. No. 98-3 E did not name Knight; the superceding indictment did. Knight argues that the government could not supersede the original indictment (filed at CR 97-37 E) by filing the superseding indictment at CR 98-3E more than 30 days after his arrest. He posits that instead the superseding indictment should have been filed at CR 97-37 E for Speedy Trial Act purposes.

We disagree. Courts have uniformly held that §3161(b)'s thirty-day rule is not violated "[w]hen a defendant is indicted within the thirty-day period and then re-indicted on identical charges based on identical facts after the expiration of the thirty-day period." U.S. v. Hemmings, 258 F.3d 587 (7th Cir. 2001); United States v. Berry, 90 F.3d 148, 151 (6th Cir.1996); see also United States v. Perez, 845 F.2d 100, 103 (5th Cir.1988) (finding that initial indictment returned by a grand jury whose term had expired tolled the thirty-day period such that a subsequent valid indictment which was "identical in all material respects to the void indictment" was timely); United States v. Mitchell, 723 F.2d 1040, 1044-45 (1st Cir.1983) (holding that, when initial indictment was filed within the thirty-day period, a superseding indictment filed outside the thirty-day window which did not change the original charges did not violate the Speedy Trial Act); United States v. Rabb, 680 F.2d 294, 297 (3d Cir.1982) ("in the absence of bad faith on the part of the government or prejudice to the defendant, an indictment returned by a grand jury whose term has expired is sufficient to toll Speedy Trial Act § 3161(b), if it is followed by a valid indictment, identical in all material respects"). No Speedy Trial Act violation occurred here because the superceding indictment charged the same offense. Both indictments name the defendant and refer to other conspirators "known and unknown." Even if his counsel had raised

the argument, given the seriousness of this offense, we would have dismissed the original indictment without prejudice to the government. 21 U.S.C. § 3162 (a)(1). Counsel and defendant were given notice of a drug conspiracy charge thus, Knight would be held responsible at sentencing for all relevant conduct with respect to that conspiracy. Knight was not prejudiced by the failure to object to the filing of the superceding indictment, and counsel is not ineffective for failing to file what would have been a frivolous motion. United States v. Benish, 5 F.3d 20, 25 (3d Cir. 1993).

Knight argues that his counsel was ineffective in that counsel conspired with the government when he stipulated that a laboratory scientist would, if called to the stand, testify that the drug seized was cocaine base. Knight finds fault with his counsel's stipulation with the government during trial that the lab report identified it as crack, when in the report it was identified as "cocaine base." We note that a conviction requires proof that the substance was cocaine base, but the sentence under the Guidelines requires proof that the substance was "crack . . . the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. §2D1.1. To invoke the harsher sentencing provisions of § 2D1.1, the government must establish that the cocaine base involved was crack by a preponderance of the evidence. See, e.g., United States v. Holman, 168 F.3d 655, 658 (3d Cir.1999) ("To carry its burden, the government must present reliable and specific evidence that the substance in question is 'crack'"). Pennsylvania laboratory reports routinely identified cocaine base as such, rather than "crack cocaine." We agree with the government that it is not required to prove that the crack cocaine contains the processing chemicals, United States v. Dent, 149 F.3d 180, 189 (2d Cir. 1998). The overwhelming evidence at trial showed the manner in which the conspirators converted the high

quality cocaine into crack, poured it into candles and then transported the crack to Erie. Multiple witnesses testified about Knight's selling of crack cocaine in mass quantities over a wide period of time. FBI Agent Gorham testified that the 67 baggies seized on the day of Knight's arrest, which were entered into evidence as exhibits, containing a lumpy, rocklike substance that based on his experience was crack cocaine. Knight has not shown us how he could therefore have possibly been prejudiced by his counsel's stipulation at trial that the drug seized was crack. There was no fraud on the court; the laboratory report was admitted into evidence. In the name of expedience Knight's attorney simply conceded that the laboratory scientist would testify as to the contents of that admissible report.

Knight also argues that his counsel was ineffective in failing to move for a judgment of acquittal on the ground that the conspiracy proven at trial was a conspiracy between Knight and Calderone-Rodriguez, rather than a conspiracy between Knight and Crockett and Cooley, his named co-defendants in the indictment filed at Crim. No. 98-3. We note that his attorney argued this in his closing to the jury. We find that the evidence at trial firmly established that there was a single conspiracy to distribute drugs, involving many people in a widespread chain of distribution, including Calderone-Rodriguez, Knight, Crockett and Cooley. Trial counsel cannot be said to have been ineffective for failing to file a motion for judgment of acquittal on this ground as it would have failed. Defense counsel's failure to move for a judgment of acquittal on any count following the close of defendant's case determined the Third Circuit's standard of review on appeal. As the Third Circuit observed, "[w]here a defendant fails to file a motion for judgment of acquittal at the close of evidence, the issue of sufficiency of the evidence is not preserved for appeal and hence we review only for plain error." U.S. v. Dill, 112 Fed.Appx. 846, 847 (3d Cir. 2004). If counsel had moved for judgment of acquittal following the close of

19

evidence, the Court of Appeals would have reviewed Knight's conviction under the "substantial evidence" standard. Under this standard the court must determine whether there is substantial evidence when viewed in the light most favorable to the government to support a jury's finding of guilt beyond a reasonable doubt. See Gov't of the Virgin Islands v. Williams, 739 F.2d 936, 940 (3d Cir.1984). After a careful review of the record we are satisfied that defense counsel's failure to move for judgment of acquittal did not prejudice Knight on appeal. Any possible prejudice suffered by him does not meet the Strickland requirement that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 695. Clearly, even if defendant's conviction were reviewed under the substantial evidence standard, his conviction and sentence would stand. Counsel cannot therefore be said to have been ineffective.

Again, Knight finds fault with the issue of the laboratory report in that he argues his counsel should have objected at sentencing to us basing our sentencing guideline calculation upon crack cocaine, as opposed to cocaine base. We disagree. When Knight was sentenced, we stated on the record that we were relying upon – not simply the stipulation as to the contents of the laboratory report – but more centrally, on the testimony of many witnesses who explained that the substance that Knight conspired to distribute was crack cocaine. Many of the witnesses described how the cocaine was converted into crack cocaine prior to shipment, and many of them also described how they were involved in the crack drug ring. Failure to raise what is a frivolous claim cannot serve as a basis for an ineffective assistance of counsel claim. Day, 969 F.2d at 41-42.

With respect to Knight's argument that he was given incorrect advice as to the amount of prison time he was facing by going to trial, as we discussed supra, Knight was given adequate

20

notice that the maximum penalty he faced was life imprisonment. First, the Indictment Memorandum which was filed with the Court and made available to counsel clearly stated a possible penalty "[a] term if imprisonment of not less than ten (10) years, to a maximum of life." (Doc. 15 at 4). Second, the aggregation of the amounts of drugs charged in the substantive counts in the superseding indictment signaled that the amount of crack cocaine alleged to have been distributed was quite large. Moreover, we note that Knight's defense counsel, Tim George and Robert A. Sambroak, Jr., both explain in their affidavits filed herein that they each advised Knight of the possibility of a life sentence during their pretrial discussions with him as to whether he should negotiate a plea agreement with the government. It was obvious that this defendant -- if the statements of various informants as to drug quantity sold over the course of this conspiracy were believed by the jury (as contained in the Jencks Act materials, which were brought to Knight's attention by attorneys Sambroak and George) — faced a life sentence. The day of the arrest, 1.8 kilograms of crack cocaine were seized by the agents, and this was disclosed to defense counsel well in advance of trial. It was also foreseeable that Knight was could be considered as a leader and thus subject to a 4 level enhancement pursuant to the Guidelines. According to defense counsel, Knight was adamant that he wanted to proceed to trial because he believed that the informants had lied to the police and that he was innocent. Knight's trial counsel's decisions and actions meet the objective standard of reasonableness and Knight cannot have been prejudiced because he knowingly and voluntarily made the decision to proceed to trial. Accordingly, we find this claim to be frivolous and without merit. Day, 969 F.2d at 41-42.

Knight also argues that his counsel was ineffective when he failed to object to the testimony of FBI Agent Gorham with respect to the chain of custody of the seized crack cocaine. Knight claims Gorham was not in the laboratory when any of the testing and handling occurred

21

and thus, counsel should have objected to this testimony as inadmissible hearsay. We disagree. Agent Gorham testified that the crack was "constantly maintained pursuant to [the Department of Justice's] practices and procedures" and "there [was no] evidence of tampering or any abnormalities regarding the way it was handled at the lab or the way it was returned." Had Knight's trial counsel challenged this, the government would have called the laboratory scientist to the stand to explain laboratory procedures used to determine the type and quantity of the drug seized. Since there was overwhelming testimony that the drug seized was crack cocaine, there was no tactical basis for making a challenge to the chain of custody in this case. We therefore deny Knight's ineffective assistance of counsel claim in this regard.

Knight finds fault with the performance of his counsel on appeal. Initially we note that counsel is not ineffective simply for failing to raise an issue on appeal, provided that the representation was reasonable professional conduct. Jones v. Barnes, 463 U.S. 745, 754 (1983). There is no evidence before us to indicate that appellate counsel's conduct in this case was in any way constitutionally deficient. Given the record evidence in this case there was virtually no chance of success on any of the issues Knight complains of in his petition on appeal. Thus, we find that counsel was not ineffective for failing to pursue issues on appeal. Buehl v. Vaughn, 166 F.3d 163, 180 (3d Cir. 1999).

In particular, Knight argues that on appeal, counsel should have argued that the government had not proven that Knight conspired with Cooley and Crockett. The elements of conspiracy are: "(1) a shared 'unity of purpose,' (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal." United States v. Perez, 280 F.3d 318, 342 (3d Cir. 2002) (internal citation omitted). The government may meet its burden with circumstantial evidence, so long as a reasonable jury could find that each element was proved beyond a

reasonable doubt. Id. This law does not require the government to prove that each alleged co-conspirator knew all of the conspiracy's details, goals or other participants. Id. at 343. We accord the jury's verdict high deference. After reviewing the substantial record we conclude that the government met its evidentiary burden to sustain the guilty verdict and hold that there was sufficient evidence from which the jury could have rejected the claim that there was insufficient evidence to support the ultimate finding by the jury of Knight's involvement in the conspiracy. Knight also argues that while the indictment charged a single conspiracy, the evidence at trial actually showed multiple conspiracies and therefore a variance existed and precluded his guilt in the single conspiracy. It is Knight's burden to demonstrate not only that a variance between the charge and the proofs existed, but also that he were affirmatively prejudiced by the variance. United States v. Quintero, 38 F.3d 1317, 1337 (3d Cir.1994). He has not met his burden, and therefore we reject his claim that counsel on appeal should have raised the issue on direct appeal.

As to the remainder of Knight's claims, we find that they are subject to dismissal because they are vague and conclusory. United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) ("vague and conclusory allegations contained in a §2255 petition may be disposed of without further investigation"); United States v. Dawson, 857 F.2d 923, 928 (3d Cir.1988).

### E. Certificate of Appealability

The remaining issue before this Court is whether a certificate of appealability ("COA") should be issued with respect to Knight's motion to vacate. In Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595 (2000), the United States Supreme Court held that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Slack, 529 U.S. at 484. Here, we find that jurists of reason would not find it debatable whether Knight states a valid claim of the denial of a constitutional right and jurists of reason would not find it debatable whether we were correct in our procedural ruling that his motion was procedurally barred. We also conclude that Knight has failed to show a substantial denial of a constitutional right. Accordingly, a certificate of appealability will not be issued with respect to Petitioner's motion to vacate.

## V. Conclusion

Knight's section 2255 motion will be denied, and a certificate of appealability will not be issued.

An appropriate order will be entered.

Date: February 4, 2009

Maurice B. Cohill, Jr.
Maurice B.Cohill, Jr.
United States District Court Senior Judge