IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    )
                                      )       1:98cr03
        v.                       )       **Electronic Filing**
                                        )
CARL ANTHONY KNIGHT     )

## <u>OPINION</u>

In August of 1999, Carl Anthony Knight ("defendant") was sentenced to life imprisonment after a jury found him guilty of conspiring to distribute a quantity of crack cocaine. Presently before the court is defendant's motion pursuant to Section 404 of the First Step Act. For the reasons set forth below, defendant's motion will be granted in the form of a re-imposed sentence of time served to date plus a reasonable period of time (not to exceed 21 days) for the Bureau of Prisons to issue any required notifications and process the release of defendant and 5 years of supervised release.

Defendant seeks a sentence of 262 months as of the date his Section 404 motion was filed. Such a reduction would in effect be a sentence of time served as of that date, and in effect would be a sentence of approximately 280 months as of this date. Based on the amount of crack cocaine attributed to defendant in the original Presentence Investigation Report ("PSIR"), he highlights the changes in the guidelines sentencing range that have occurred since his original sentencing. He further notes that his only prior criminal history was the result of an offense committed as a juvenile. And finally, he further maintains that his current age and his post-sentencing rehabilitative efforts support the requested relief.

The government contends that defendant is not entitled to relief because the testimony at trial and sentencing unequivocally demonstrated that even if the Fair Sentencing Act of 2010 had

been applied, defendant would have been charged with a statutory violation that would permit the life sentence he received.  Further, from its perspective the drug quantities attributable to defendant through the trial testimony of his co-defendants and co-conspirators would result in the same guidelines sentencing calculations and thus the same sentence would and should be imposed under the advisory guidelines as was imposed under the then-mandatory sentencing guidelines.  It further asserts that the relief defendant seeks is barred because granting such relief would result in retroactive application of United States v. Booker, 543 U.S. 220 (2005), and Apprendi v. New Jersey, 530 U.S. 466 (2000), which cases have been held to not have retroactive application on collateral review.  Thus, from the government's perspective this court lacks the statutory authority 1) to revisit the United States Court of Appeals for the Third Circuit's determination that the judicial findings of drug quantity necessary to increase the statutory penalties above those that were charged in the indictment did not constitute plain error; or 2) to otherwise apply Booker to defendant's sentence and vary from the purported mandatory sentencing range of life.

The standards by which we review First Step Act motions are set forth in United States v. Jaison Ceatrix Thompson, 1:05cr42, 2019 WL 4040403 (W.D. Pa. Aug. 27, 2019), and United States v. Warren, 1:08cr46, Doc. No. 109 (W.D. Pa. Nov. 6, 2019), and those standards are incorporated herein.  Those standards and the record as developed in conjunction with the instant motion sufficiently support the determination that the court should exercise its discretion and award defendant the reduced sentence referenced above.

We previously have rejected the government's contention that a defendant should be denied relief merely because he or she would be subject to the same guidelines sentencing range if the case were brought today.  See United States v. Frederick, 2:07cr387 (W.D. Pa. Feb. 4, 2020),  Doc. No. 452 at p. 5; United States v. Dennis, 2:07cr37 (W.D. Pa. Feb. 18, 2020), Doc.

63 at 2-3.  We did so because a defendant's eligibility for relief is determined solely by

qualifying under the First Step Act's definition of a "covered offense" and is not conditioned on a

corresponding decrease in the applicable guidelines sentencing range.  See Thompson, 2019 WL

4040403 *11 n.6 (citing United States v. Garrett, 2019 WL 2603531, *3 (S.D. Ind. June 25,

2019) (rejecting the government's contention that relief should be denied where application of

the career offender guidelines continued to produce the same sentencing range of 360 months to

life and opining that "[t]he fact that Mr. Garrett's guideline range remains unchanged does not

foreclose a reduction of his sentence, at least not where he was sentenced to the mandatory

minimum and the mandatory minimum sentence was thereafter reduced by section 2 of the Fair

Sentencing Act.") (citing United States v. Bean, No. 1:09-cr-143, 2019 WL 2537435, at *5–6

(W.D. Mich. June 20, 2019)); accord United States v. Biggs, 2019 WL 2120226, *3-4, 7 (N.D.

Ill. May 15, 2019) (same); United States v. Hadley, 389 F. Supp.3d 1043, 1048 (M.D. Fla. 2019)

(granting First Step Act motion notwithstanding unchanged career offender guidelines

sentencing range of 360 months to life); United State v. Payton, 2019 WL 2775530, *4-5 (E.D.

Mich. July 2, 2019) (granting First Step Act relief where career offender guidelines sentencing

range remained unchanged); United States v. Clemon, 2019 WL 6894130, *1 (D. S.C. Dec. 18,

2019) (granting relief where pre- and post-First Step Act guidelines sentencing range remained

unchanged); cf. United States v. Brandon, 2019 WL 4139400, *3-4 (E.D. Mich. Aug. 30, 2019)

(granting First Step Act relief notwithstanding presidential commutation of sentence that reduced

it below the guidelines sentencing range applicable at First Step Act re-sentencing) (collecting

cases).  Thus, even assuming we are unable to re-examine a defendant's prior guidelines

sentencing range and he or she remains subject to the same guidelines sentencing range, these

sentencing factors are not legal barriers to awarding First Step Act relief.

We likewise have rejected the government's argument that we should follow the sentencing rationale utilized at a defendant's original sentencing hearing and simply arrive at the same sentence.  See United States v. Frederick, 2:07cr387 (W.D. Pa. Feb. , 2020),  Doc. No. 452 at p. 5; United States v. Warren, 1:08cr46, Doc. No. 109 (W.D. Pa. Nov. 6, 2019); United States v. Dennis, 2:07cr37, Doc. 63 at 3.  That rationale was advanced under a set of existing precepts that were displaced by the First Step Act and replaced by the standards embodied therein.  The standards now governing the task at hand were intended to give the defendant a "do-over of sorts" and we fail to see any sound justification for shirking the responsibility of performing that task under the guise of prior judicial musings rendered under meaningfully different circumstances.

We likewise have declined to limit our review of the information to be considered in conjunction with a section 404 First Step Act motion to 1) the information available at the time of the original sentencing and/or 2) only changes in the applicable guidelines.  See Thompson, 2019 WL 4040403, *8-11 (declining to adopt the scope of review under 18 U.S.C. § 3582(c)(2) on the ground that "the First Step Act contains its own independent grant of discretionary authority to the district courts by permitting a 'court that imposed a sentence for a covered offense' to 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed.'  This grant 'authorizes a reduction in sentence by its own terms' and does not depend on any complimentary authority in § 3582.") (quoting Dodd, 372 F. Supp.3d at 797 n.2 and Boulding, 379 F. Supp.3d at 653); Warren, 1:08cr46, Doc. No. 109 (W.D. Pa. Nov. 6, 2019) (declining to limit the scope of review to the record as it existed at the original sentencing hearing and/or to follow in lockstep with the original sentencing rationale).  Instead, we have determined that "a court deciding whether to impose a reduced sentence under section 404 should evaluate all such information pursuant to

the 'lodestone' of sentencing factors set forth in 18 U.S.C. § 3553(a), any changes to the applicable guideline range, post-sentencing conduct bearing on rehabilitation and so forth." Thompson, 2019 WL 4040403, *10 (collecting cases).

This approach "permits the court to engage in its traditional role of factfinding in relation to the imposition of a sentence within the prescribed limits." Id. "It also permits the consideration of the brute facts and information that traditionally have a bearing on the sound exercise of the court's sentencing discretion." Id.

Each of the above tenants has since become settled law under the United States Court of Appeals for the Third Circuit's controlling and persuasive precedent. A defendant's eligibility to receive relief under the First Step Act turns on whether the elements of the offense of conviction were modified by sections 2 or 3 of the Fair Sentencing Act of 2010 and not whether his or her actual conduct might have supported charges of the same or greater magnitude. United States v. Jackson, 964 F.3d 197, 201-02 (3d Cir. 2020). This approach is supported by the textual structure of the First Step Act, the "anti-surplusage" cannon of statutory construction, the verb tense utilized in the statute, the structure of the modifications made by the Fair Sentencing Act of 2010, the common understanding of a "violation" and "the clear weight of persuasive authority" issued by the other courts of appeals. Id. at 202-04. It likewise avoids the speculation that would ensue if eligibility determinations were based on the anticipated discretionary decisions that the prosecutors and courts frequently make under the myriad of circumstances that arise in such settings. Id. at 205. And it is in line with the straightforward approach that Congress chose in crafting the statute. Id. ("Beyond a few specific limitations found within the First Step Act, we see 'no indication that Congress intended a complicated and eligibility-limiting determination at the 'covered offense' stage of the analysis.'") (quoting Wirsing, 943 F.3d at 186 (citing § 404(a), 132 Stat. at 5222)).

It likewise is settled that relief under the First Step Act is not barred solely because a defendant's actual conduct continues to produce the same guidelines sentencing range.  United States v. Easter, 975 F.3d 318, 327 (3d Cir. 2020).  Instead, once a defendant is determined to be eligible for relief, the court's decision as to whether to grant it and impose a new sentence must be grounded in a meaningful and individualized assessment of the § 3553(a) factors "to the extent they are applicable."  Id. at 326.  These factors encompass any post-sentencing developments, such as health issues and measures aimed at rehabilitation.  Id. at 326-27.  Thus, while an eligible defendant is not entitled to relief or even a plenary hearing in exercising the discretion afforded under the First Step Act, the "do-over of sorts" in deciding whether relief should be granted requires an application of the traditional sentencing factors to the current circumstances presented through the motion.  Id. at 325.  Such an approach 1) assures that any recent changes having a bearing on the mandated balancing of factors are considered and 2) advances the goals of promoting consistency and predictability in sentencing.  Id.

Of course, our unwillingness to follow the government's lead on the tenants recounted above does not mean that the salient aspects of defendant's character and criminal history it has highlighted should be discounted.  To the contrary, those factors continue to inform the sound exercise of discretion in formulating an appropriate sentence.  But it is the discretion that has been afforded by the First Step Act that must be exercised in accordance with the prevailing standards of today notwithstanding the government's perception that yesterday's views were better.

We turn to that undertaking in this case.  On March 10, 1998, a grand jury returned a 7 count superseding indictment charging defendant and two co-defendants with violations of 21 U.S.C. § 846.  Count one charged the defendants with conspiring from January of 1993 to November of 1997 to distribute and possess with the intent to distribute "a detectable amount" of

cocaine base or crack, contrary to 21 U.S.C. § 841(a)(1).  The charge did not reference a specific amount needed to trigger an enhanced penalty under § 841(b)(1).  Thus, as returned the indictment charged only a conspiracy having an objective of distributing a quantity of crack in violation of § 841(b)(1)(C).

Defendant exercised his constitutional right to a jury trial.  Defendant's supplier, Victor Calderone-Rodriguez, and two co-conspirators, Jermaine Lucas and Robert Jones, provided extensive and consistent testimony about an operation that involved bi-weekly trips to New York City.  Prior to a trip, defendant would give Calderone-Rodriguez on average $50,000.00 to purchase cocaine.  Calderone-Rodriguez generally would purchase at least a kilogram of cocaine and usually between 1.5 to 2 kilograms per trip.  He and other co-conspirators would then cook it into crack and bring it back to Erie, Pennsylvania.  Upon returning to Erie, the crack was delivered to defendant for distribution.  Defendant had high-volume customers, such as his cousin Ronnie Knight and Lionel Williams.  Williams started purchasing a quarter kilogram per week from defendant, which increased to a kilogram per week by the end of the conspiracy.

Calderone-Rodriguez and the co-conspirators came under the surveillance of law enforcement near the end of the conspiracy.  Information gained from multiple sources culminated in a raid of several neighborhood residences directly following a return trip to Erie. Calderone-Rodriguez agreed to cooperate and contacted defendant.  Defendant was apprehended after he was contacted by Calderone-Rodriguez and went to Calderone-Rodriguez's residence.

Defendant testified at trial and denied any involvement in the conspiracy.   His testimony was to the effect that his contacts with all the other co-conspirators were nothing more than activities among friends.  For example, he testified that he responded to Calderone-Rodriguez's "pages" because he wanted to get a haircut.

7

The jury rejected defendant's testimony and returned a verdict of guilty on April 7, 1999. Defendant's bond was revoked and he was taken into custody. The probation office prepared a presentence investigation report ("PSIR") and a sentencing hearing was scheduled.

The PSIR set defendant's base offense level at 38 based on a finding that 1.8 kilograms had been seized and thus a distribution in excess of 1.5 kilograms of crack cocaine was attributable to defendant. This was the highest amount identified for the distribution of crack cocaine in U.S.S.D. § 2D1.1 at the time (i.e., the top of the scale). A four (4) level increase was applied for defendant's leadership role in the offense. He had helped organize and lead a distribution ring that involved at least eight (8) other individuals. A two (2) level increase was applied for obstruction of justice. A co-cooperating co-conspirator indicated that defendant had made overtures reflecting implicit threats. His trial testimony was referenced as an alternative basis for the increase.

Defendant's adjusted base offense level was forty-four (44). Because the highest base offense level listed in the guidelines was 43, defendant's base offense level was adjusted to 43 pursuant to Application Note 2 of Part A of Chapter 5.

Defendant received two (2) criminal history points based on a 1989 juvenile adjudication of delinquency. The offense involved possession of a quantity of cocaine that was packaged in a manner indicative of distribution. Two criminal history points produced a criminal history category of II. A base offense level of 43 and a criminal history of II produced a guidelines sentencing range of life imprisonment. Absent a departure, a sentence at this range was mandatory.

Defendant appeared before Judge Cohill for sentencing on August 11, 1999. He objected to the finding that he was an organizer or leader of the criminal activity presented at trial and otherwise asserted that he was not involved in a criminal conspiracy as advanced by the

8

government.  He emphasized the self-interest of each witness that testified at trial and objected to the information taken directly from "302" reports generated by FBI agents involved in the investigation.

Judge Cohill rejected defendant's challenge to the leadership enhancement.  He noted defendant had been at the top of a distribution ring that involved at least eleven other individuals working to distribute vast quantities of crack cocaine in the Erie area.  Defendant set the price for the drugs, determined the amount individuals would receive, incrementally increased the amounts those individuals could receive based on the trust each earned with him, and determined when and how much crack would be purchased for redistribution in the Erie area.  Judge Cohill then sentenced defendant to life imprisonment, five (5) years of supervised release in the event defendant were to be released and $100.00 special assessment.

Defendant appealed.  The United States Court of Appeals for the Third Circuit affirmed. Defendant sought certiorari.  He raised for the first time a challenge to his sentence based on Appendi.  The Supreme Court granted the petition, vacated defendant's sentence and remanded the case.  Knight v. United States, 531 U.S. 989 (2000).

On remand, the Third Circuit expressly noted that the indictment did not charge a specific quantity of crack cocaine in count one.  Nor did the jury make a finding of the amount attributable to defendant pursuant to his role in the conspiracy.  Nevertheless, the court determined that defendant had failed to meet the threshold for relief under a plain error standard of review.

In rejecting defendant's challenge under Apprendi, the panel reasoned that defendant's defense did go to the amount of the drugs involved, but to whether he even participated in the charged conspiracy.  United States v. Knight, 50 F. App'x 565, 568 (3d Cir. 2002). Concluding that the jury unequivocally had rejected that defense, the court opined:

9

there is no doubt whatsoever that the jury concluded beyond a reasonable doubt that Knight's conspiracy involved the distribution of more than 50 grams of cocaine base. That is all that is necessary to trigger the maximum statutory penalty of life imprisonment.

Indeed, on this record, we can conclude with confidence that the 50 gram threshold authorizing life imprisonment pales in comparison to the vast quantity of drugs the jury concluded beyond a reasonable doubt that Knight actually distributed. Therefore, here, as in [United States v.] Cotton, [535 U.S. 625 (2002),]"even assuming [defendant's] substantial rights were affected, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." 535 U.S. at ----, 122 S. Ct. at 1786. Accordingly, we will once again affirm the judgment of sentence.

Knight, 50 F. App'x at 568-69. Accordingly, the Court of Appeals for the Third Circuit set defendant's statutory maximum at life based on a determination that "the sentencing court made a finding of drug quantity that implicated the enhanced sentencing penalties contained in § 841(b)(1)(A) which authorizes life imprisonment for drug offenses involving 'at least 50 grams of cocaine base.'" Id. at 568.

On December 22, 2003, defendant filed a motion to vacate pursuant to 28 U.S.C. § 2255. The motion was denied pursuant to an opinion issued on February 4, 2009. See Doc. No. 212. Among other things, Judge Cohill recounted the testimony pertaining to the scope of the conspiracy and the volume of distribution reflected in the government witnesses' testimony. Id. at 20-21. He further noted that defendant was made well-aware of the potential risk of proceeding to trial, and it was explained to him prior to trial that doing so would clearly raise the potential of a life sentence. Id. at 21.

In April of 2008, defendant filed two motions for "Retroactive Application of the Sentencing Guidelines to Crack Cocaine Offense" seeking relief pursuant to 18 U.S.C. § 3582. See Doc. No.s 194, 195. He likewise filed a motion to proceed on the motions without the benefit of counsel, which was granted on September 20, 2008. See Doc. No. 207. Judge Cohill denied defendant's § 3582 motions on the grounds that 1) Amendment 706 to the United States Sentencing Guidelines did not change the sentencing range for offenses

"involving quantities of crack cocaine greater than 4.5 kilograms" and "[b]ecause Knight's case involved greater than 4.5 kilograms, the base offense level would remain [at] 38" prior to the specific offense characteristic increases for a leadership role and obstruction of justice. Opinion of February 4, 2009 (Doc. 211), at 4. He likewise declined to apply the principles of Booker and treat the guidelines as being advisory as to defendant's sentence. Doc. No. 211 at 4-5.

In rejecting defendant's challenge calling for the retroactive application of Booker pursuant to § 3582(c)(2), Judge Cohill reasoned:

> To impose a reduced sentence below the minimum of the new amended guideline range would run afoul of section 3582(c)(2). It is true that the specific limitation on our jurisdiction is found in policy statement I B1.10(b)(2)(A), however, the limitation on the court' s power to reduce a sentence is derived from the statute. Even if we assumed, that the policy statement standing alone is merely advisory post-Booker, we still could not impose a sentence below the minimum of the new amended guideline range without violating the statute. United States v. Strothers, 2008 WL 2473686, *4 (W.D. Pa June 19, 2008) (court cannot sentence below the bottom of the guideline range even if the policy statement is advisory because such a sentence "would be patently inconsistent with the policy statement ... and, therefore, Section 3582(c)(2) would not permit such a sentence.").

> Finally, we must add that even if we had discretion in this matter, we would not exercise it to reduce the sentence. The acts of Mr. Knight were egregious. There is no way of estimating the number of lives affected by the drugs he distributed. We have presided over many drug cases. This was one of the worst. See Opinion and Order dated February 4, 2009, filed contemporaneously herein, denying motion to vacate sentence pursuant to 28 U.S.C. § 2255 (in which we review the facts leading to Knight's indictment and conviction).

Doc. No. 211 at 4-5. Thus, defendant's motions for retroactive application of Amendment 706 were denied on the grounds that his guidelines sentencing range remained unchanged because the offense involved the distribution of more than 4.5 kilograms of crack and the court lacked the authority under § 3582(c)(2) to treat the resulting sentencing range as advisory and re-sentence defendant under the authority to impose a variance created by Booker.

With the above backdrop in mind, we turn to defendant's First Step Act motion. Defendant was convicted of and sentenced for a covered offense. On August 17, 1999, defendant was sentenced to life imprisonment based on the attribution of more than 1.5 kilograms of crack cocaine pursuant to his involvement in a § 846 conspiracy. The sentence was mandated by the sentencing guidelines and reflected the highest statutory maximum sentence under § 841(b)(1) at the time. The Third Circuit determined that defendant was found guilty of an offense which triggered the penalties of 21 U.S.C. § 841(b)(1)(A)(iii), because "there is no doubt whatsoever that the jury concluded beyond a reasonable doubt that Knight's conspiracy involved the distribution of more than 50 grams of cocaine base [which] is all that is necessary to trigger the maximum statutory penalty of life imprisonment." Knight, 50 F. App'x at 568-69. The offense was committed prior to August 3, 2010.

To sustain the conviction in violation of § 846 and §841(b)(1)(A)(iii), the relevant statutory element the government was required to prove was that the offense involved an agreement to distribute or possess with the intent to distribute more than 50 grams of crack cocaine. Sections 2 and 3 of the Fair Sentencing Act modified the statutory penalty for this offense by raising the threshold quantity "to trigger the 10-years-to-life range" to 280 grams and lowering the penalty range for 50 grams to the "5-to-40-year range." Easter, 975 F.3d at 321. Under the controlling "statute of conviction approach," defendant was convicted of and sentenced for a "covered offense" as defined by the First Step Act. Jackson, 964 F.3d at 202 & n.6

We reject the government's contention that we must follow the sentencing rationale utilized at defendant's original sentencing and re-impose the same term of incarceration because defendant was convicted only of a conspiracy in violation of 21 U.S.C. § 846 and not of a distribution offense in violation of § 841(a). Defendant was charged with conspiring to violate §

12

841(a).  The conspiracy involved acquiring cocaine, cooking it into crack, and distributing the crack cocaine in the Erie area.  The United States Court of Appeals for the Third Circuit held that the penalties of defendant's offense were controlled by § 841(b)(1)(A).  Thus, the offense of conviction was one that was modified by section 2 and 3 of the Fair Sentencing Act of 2010.  See United States v. Hardwick, 802 F. App'x 707, 708-09 (3d Cir. 2020) (recognizing First Step Act applies to § 846 conspiracies to distribute cocaine base); United States v. Willis, 2020 WL 6131129 (E.DD. Pa., Oct. 19, 2020) (Kearny, J.) (treating § 846 conspiracy to distribute crack cocaine as a covered offense); United States v. Gravatt, 953 F.3d 258, 259 (4th Cir. 2020) (section 846 does not proscribe the possession or distribution of any particular controlled substance or the punishment for the same and thus the conspiracy charge must incorporate the substantive offense and penalties in §§ 841(a)(1) and 841(b)(1); and a charged conspiracy to distribute multiple controlled substances, one of which is cocaine base, is a covered offense under First Step Act); United States v. Johnson, 2020 WL 6482695, *3 (Nov. 4, 2020) (conspiracy convictions based on multiple-object distribution schemes constitute covered offenses provided at least one of the objects informing the sentencing was cocaine base); United States v. Mitchell, -- F. App'x --, 2020 WL 6117698, *3 (6th Cir. Oct. 16, 2020) (Stranch, J, concurring) (collecting growing appellate authority recognizing that a defendant need only be convicted of one covered offense to be eligible for resentencing on an aggregate penalty for diverse convictions).

    We likewise decline to treat the guidelines as binding under the First Step Act.  First, the courts repeated have rejected the notion that eligibility for relief is dependent on a favorable change in the defendant's guidelines sentencing range.  Jackson, 964 F.3d at 204-05 (holding the defendant was entitled to consideration of his First Step Act motion on the merits notwithstanding the district court's determination that his guidelines range had not changed and

opining that Congress's intent was to "afford relief to [other] pre-Fair Sentencing Act offenders, including those who were heretofore ineligible.") (quoting Wirsing, 943 F.3d at 186); Easter, 975 F.3d at 322 (exercising the discretion under the First Step Act must be undertaken even though a change in the guidelines sentence range has not occurred); United States v. Frederick, 2020 WL 5555302, *2 (W.D. Pa. Feb. 4, 2020) ("defendant's eligibility is determined solely by qualifying under the First Step Act's definition of a covered offense and is not conditioned on a corresponding decrease in the applicable guidelines sentencing range") (collecting cases).  This principle follows in part because the authority to re-impose a modified sentence under the First Step Act is authorized by 18 U.S.C. § 3582(c)(1)(B).  Hardwick, 802 F. App'x at 709; Easter, 975 F.3d at 323 ("First Step Act motions fall under § 3582(c)(1)(B).").  Given this authority, the courts have rejected the imposition of limitations beyond those set forth in subsection c of § 404 of the First Step Act.  See Jackson, 964 F.3d at 205 ("Beyond a few specific limitations found within the First Step Act, we see 'no indication that Congress intended a complicated and eligibility-limiting determination at the 'covered offense' stage of the analysis.'") (quoting Wirsing, 943 F.3d at 186 (citing § 404(a)).  If we were to conclude that the mandatory nature of the United States Sentencing Guidelines at the time defendant was sentenced must be given controlling effect today, we would be engrafting a limitation on eligibility into § 404 that Congress chose not place in the statute it enacted.  And such a requirement would appear to run counter to the statutory purpose for which Congress acted and the potential remedy it sought to provide.  Easter, 975 F.3d at 323 ("Since the First Step Act would have a minimal impact on inmates who had previously benefited via the Guidelines, Congress's intent must have been to afford relief "to [other] pre-Fair Sentencing Act offenders, including those who were heretofore ineligible." Wirsing, 943 F.3d at 186.  This suggests that Congress wanted the First Step Act to have a broad effect.").

Moreover, recognizing the ability to grant discretionary relief based only on a change in penalties effectuated by the Fair Sentencing Act avoids the difficult constitutional issues that would accompany any attempt to reconcile the use of prior judicial factfinding at sentencing with the constitutional limitations established by Apprendi, 530 U.S. at 476 (any fact that increases the maximum statutory penalties must be charged in the indictment and proved beyond a reasonable doubt) and Alleyne v. United States, 570 U.S. 99, 103 (2013) (any fact that increases the minimum statutory penalties must be charged in the indictment and proved beyond a reasonable doubt). The government correctly notes that Apprendi and Alleyne have not been given retroactive effect in the context of collateral review. But the current motion is not brought pursuant to 28 U.S.C. § 2255. The statutory grant of authority in the First Step Act provides this court with the discretion to impose a sentence for a covered offense as if the reductions from the Fair Sentencing Act were in place at the time of the offense. Such authority requires a present-day act of imposing a sentence. And in identifying the contours of such an act, it must be assumed that Congress knew and understood the established constitutional principles that would adhere to that undertaking. See Allen, supra, at *4 ("While Alleyne and Apprendi do not provide retroactive relief, Congress legislates in the context provided by constitutional principles.") (citing Rust v. Sullivan, 500 U.S. 173, 191 (1991) ("[W]e assume [that Congress] legislates in light of constitutional limitations."). "Construing section 404 in the context provided by Alleyne and Apprendi, courts should reject a reading of the statute that would preclude eligibility for relief under the First Step Act due to a judicial finding of drug quantity many years ago." Id.; accord Dodd, 372 F. Supp.3d at 797-98 ("Both Apprendi and Alleyne are binding on this Court for sentencings held today. That these procedural rules do not trigger a right to relief retroactively on collateral review, see Walker v. United States, 810 F.3d 568, 574–75 (8th Cir. 2016), is distinct from whether they apply to proceedings independently authorized under the

First Step Act."); cf. United States v. Pugh, 2019 WL 1331684, *3 (N.D. Ohio, March 25, 2019) ("Because the jury made no finding as to the specific drug amount, subsequent Supreme Court precedent requires that defendant cannot be responsible for more than 50 grams [for the purpose of determining the statutory minimums and maximums under the Fair Sentencing Act as applied through the First Step Act].") United States v. Biggs, 2019 WL 2120226, *4 (N.D. Ill., May 15, 2019) (recognizing First Step Act proceedings as a form of plenary resentencing subject to the procedural rules now in place). To do otherwise would raise serious constitutional questions about the grant of authority in the statute. And these constitutional concerns would only be further compounded by insisting that a mandatory life sentence must again be imposed based on such judicial factfinding. Given these concerns, we decline to limit relief under the First Step Act in such a manner.

In determining the degree of relief if any that should be given, we begin by taking note of the changes that have transpired over the past 18 years with regard to defendant's offense conduct and criminal history. While not directly relevant, the correlation between these two sentencing ranges does shed light on the ameliorative adjustments that have been made to the treatment of crack cocaine offenses under the United States Sentencing Guidelines.

The highest amount of crack cocaine attributable to defendant by express judicial finding was 4.5 kilograms. While both Judge Cohill and the panel in Knight referenced the government witnesses' testimony relaying the vast quantities of crack cocaine distributed by the conspiracy, the elements required only proof of 50 grams or more of crack cocaine at the time of the offense. The judicial finding as to the amount triggering the Guidelines range of life was "more than 1.5 kilograms" in 2000. See Presentence Investigation report at ¶ 38. And Judge Cohill made a finding in 2008 that defendant was accountable for the distribution of more than 4.5 kilograms in denying his § 3582 motions.

In 1999, the offense level for 1.5 kilograms of crack cocaine was set at 38 pursuant to U.S.S.G. § 2D1.1(c)(5).  Defendant received a 4 level increase for a leadership role and a 2 level increase for obstruction of justice.  A combined offense level of 44 and criminal history category II produced a guidelines sentencing range of life.  Attribution of more than 4.5 kilograms of crack with the same Chapter Three enhancements and Chapter Four criminal history category was required to produce the same guidelines range in 2008.  In other words, the amount of crack cocaine required to trigger the sentence imposed on defendant under the guidelines had been increased three-fold – from 1.5 kilograms to 4.5 kilograms.  Today, a criminal history category of II and attribution of 1.5 kilograms with the same enhancements would produce a base offense level of 32 and adjusted base offense level of 38, with a resulting sentencing range of 262 to 327 months; attribution of more than 4.5 kilograms would produce an adjusted base offense level of 40 and a resulting sentencing range of 324 to 405 months.  See Chapter Five, 2018 United States Sentencing Guidelines Manual, https://www.ussc.gov/guidelines/2018-guidelines-manual-annotated.

The record reflects only two attributions of crack cocaine to defendant by judicial finding that have been subjected to appellate review.  The initial finding of 1.8 kilograms in 1999 (which equated to "more than 1.5 kilograms" under guidelines) and the finding of "more than 4.5 kilograms" in conjunction with defendant's § 3582 motions in 2008.  Under the guidelines the treatment of these amounts in conjunction with defendant's criminal history category of II has been reduced by a reduction from life, which is a sentencing range that exceeds 405 months (the highest numerical number-of-months designation in the sentencing table), to 262 months and 324 months, respectively, at the low end.  This reflects approximately a 35 percent reduction over the past 22 years when the original amount from 1999 is considered; and approximately a 20 percent reduction when the finding of 4.5 kilograms from 2008 is considered.

To be clear, the court will credit the government's contention that it could charge and prove a quantity of crack cocaine attributable to defendant that would again trigger an advisory guidelines sentencing range of life under any criminal history category.  That said, the above changes in the treatment of crack cocaine do not have a direct impact on the advisory guidelines the court must consider in the exercise of its discretion.  Nevertheless, they do provide some measure of comparison for the purpose of determining how defendant's offense conduct and criminal history (to the extent they were subjected to prior appellate review) would be treated today.  And considering these variations in a general manner is in keeping with the remedial purposes of the First Step Act and the "do-over of sorts" it has provided for offenders falling with its ambit.  See United States v. Frederick, 2:07cr387 (W.D. Pa. Feb. , 2020),  Doc. No. 452 at p. 9 ("A major purpose of the First Step Act was to permit the court to impose a revised sentence that reflects the congressional judgment that the current sentencing norms and standards more adequately reflect the seriousness of crack cocaine offenses.") (citing United States v. Mitchell, 2019 WL 2647571, *8 (D. D.C., June 27, 2019) (the fact that defendant would not qualify as a career offender if sentenced today appropriately is considered in exercising the court's discretionary authority under the First Step Act) (quoting United States v. Biggs, 2019 WL 2120226, *4 (N.D. Ill., May 15, 2019) ("Because the Fair Sentencing Act and the First Step Act reflect Congress's judgment that shorter prison sentences adequately reflect the seriousness of crack cocaine offenses, reduction of Biggs's sentence aligns the statutory purposes of sentencing with the goal of the reform legislation.").  In other words, although defendant is not entitled to a full resentencing at this juncture and we operate with the understanding that his guidelines sentencing range of life remains unchanged, the ameliorative adjustments in punishment for the specific findings of drug quantity in the record when considered in

conjunction with a criminal history category of II do provide a backdrop that will be considered in the exercise of our discretion.

Other aspects of the record also support the exercise of discretion on defendant's behalf. Defendant has displayed a persistent work ethic through much of his life. Defendant attended school until April of his senior year when he was committed to Vision Quest. He returned to school in September of 1990 after he was released from Vision Quest but withdrew in December prior to graduating. He worked a couple of part-time jobs while attending school in order to support his paramour, who was pregnant with his child. After withdrawing from high school, defendant took educational classes to prepare for his G.E.D.

Defendant worked at several places after high school. He initially worked at odd jobs with his father. He then sought to establish and run a sandwich shop, which ultimately closed because it was not profitable. He worked for his uncle in managing a clothing store and he worked at a photography shop while on pretrial release. These various work-related undertakings reflected an ongoing attempt to remain employed or otherwise engaged in entrepreneurial ventures. They also reflect defendant's desire to be a father and provider for those who depended upon him.

These aspects of defendant's character continued to guide him after he entered prison. Throughout the last 21 years, defendant persistently has enrolled in and completed recreational and educational classes. He has completed no fewer than 45 educational and vocational classes. These include classes needed to acquire improved personal and vocational skills. He has completed classes in mentoring others, rehabilitating real estate, public speaking, math, typing, HVAC skills, communicating effectively, history, applied parenting, finding and interviewing for jobs, political science, understanding financial markets, residential electricity, utilizing a law library, OSHA training, personal finance, economic development, breaking barriers, recording

contracts, conversational Spanish, conversational French, advanced political science, African economic development, gemstones, starting a small business, and several others.

Defendant has spent significant time developing the skills needed to work as an inmate elder, chaplain and mentor.  In this capacity he seeks to help younger inmates acquire the skills to re-enter society successfully upon release.  A corrections counselor who has known defendant for the past 10 years in this setting advises that he has given staff and inmates respect and earned their reciprocal respect.  And he has remained active in mentoring younger inmates. Memorandum of Correctional Counselor R. Sweitheim of July 8, 2019 (Doc. No. 266-10) at 1.

Defendant likewise has not had any serious infractions in the last several years.  He has received only one minor incident report over the 10 years he has been at FCC Allenwood and "is not a management problem."  Id.  And his institutional behavior has earned him at least 510 days of good time credit, which further suggests he has been free from major disciplinary incidents over the past several years and has not been a concern for the Bureau.

In recent years defendant has developed and sought to implement an "Individualized Reentry Plan."  Individualized Reentry Plan (Doc. No. 266-8).  Among other things, he has furthered his level of education, paid all financial obligations, completed drug abuse education and drug abuse treatment programs and continued to pursue educational and vocational goals as recommended.  Id.

Defendant's post-offense rehabilitation efforts reflect factors that commonly support a variance and further support the exercise of our discretion here.  With the exception of one minor infraction, he has been an exemplary inmate.  He has taken advantage of the educational and recreational programs made available to him.  He has persistently sought to improve his personal and social skills through these classes.  He has successfully developed the skills needed to be a chaplain and mentor to younger inmates.  He has earned the respect of correctional staff with

whom he interacts.  This significant effort to improve himself and the chances of his success upon release further support the exercise of our discretion and the reduced sentence of time served.

Moreover, defendant committed his only prior offense at a very young age.  He had just turned 18 years of age at the time.  He was committed to "Vision Quest" and served about 4 months in the facility.  He was released to "Home Quest" for 1 month and the case was discharged approximately 24 months later.  Including the period of home supervision, he served about 5 months for this offense.  Defendant's age at the time he committed his only prior offense and the degree of punishment the presiding judge found to be appropriate for this criminal conduct are factors that typically provide a basis for some degree of leniency at sentencing and further support the exercise of our discretion at this juncture.

Several other aspects of the record also inform the exercise of our discretionary authority and support the imposition of a reduced sentence here.  The Assistant United States Attorney who prosecuted defendant has indicated that from his perspective, Caldrone-Rodrigues was arguably the kingpin of the conspiracy.  Caldrone-Rodrigues, after accepting responsibility and cooperating, received a sentence of 8 years.  Defendant was offered a plea agreement that called for a sentence of 15 years.  This offer was rejected and defendant proceeded to trial, which resulted in a life sentence.  Based on these circumstances as well as the detailed understanding of the record gained as the lead prosecutor, the Assistant "believe[s] that imposition of a mandatory life sentence in this case was unjust."  July 25, 2019, Letter of Assistant John J. Trucilla (Doc. No. 266-2).[1]

---

[1] Former Assistant United State Attorney John J. Trucilla is now a Judge on the Court of Common Pleas of Erie County, Pennsylvania.  In authoring the letter he made clear that his letter was "exclusively provided on the basis of [his] role as former Assistant United States Attorney." Id.  The court has treated the letter as such and considered it only in that capacity and context.

Finally, defendant was young at the time he committed the instant offense.  He was 22 when the offense commenced in November of 1993 and 28 when he was sentenced.  He has served close to 22 years.  He is now 49 and has reached an age where the statistics on the recidivism show that his likelihood of re-offending has meaningfully declined.[2]  His current age, significant period of incarceration, maturation and post-sentencing conduct while incarcerated bode well for his successful reintegration.  Collectively, these factors further support the determination that a re-imposed sentence of time served is a sufficient term of incarceration.

Consideration of all of the above through the lens of the § 3553(a) factors convinces us that the proper exercise of discretion is a reduction to a term of incarceration of time served plus a reasonable period, not to exceed 21 days, for processing his release and 5 years of supervised release.  A reduction of this degree strikes the proper balance in applying the § 3553(a) factors and imposes a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.  Although defendant's drug-trafficking offense truly was the result of a major drug-trafficking operation, a sentence of 261 months adequately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.  It likewise is sufficient to serve the interests of promoting adequate deterrence and protecting society from harm.  It further appears to have satisfied the need to rehabilitate defendant.  Accordingly, defendant's motion pursuant to

---

[2]  See National Institute of Justice, Five Things About Deterrence (May 2016), at 2, available at https://www.ncjrs.gov/pdffiles1/nij/247350.pdf  ("Even those individuals who commit crimes at the highest rates begin to change their criminal behavior as they age.  The data show a steep decline at about age 35.").

Section 404 of the First Step Act will be granted and a Judgment Order of Conviction and

Sentence imposing this new sentence will be issued.

Date: January 27, 2021

                                                  s/David Stewart Cercone
                                                  David Stewart Cercone
                                                  Senior United States District Judge


cc:      Adam N. Hallowell, AUSA
         Christian A. Trabold, AUSA
         Khashayer Attaran, AFPD

         (*Via CM/ECF Electronic Mail*)